J.W. and CLAIRETTE W. RATCLIFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ratcliff v. Commissioner
Docket No. 7708-82.
United States Tax Court
T.C. Memo 1983-636; 1983 Tax Ct. Memo LEXIS 152; 47 T.C.M. (CCH) 86; T.C.M. (RIA) 83636; October 13, 1983. Clarke Cable Ward, for petitioners. Cheryl M. D. Rees, for respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency in the amount of $4,932.86 in petitioners' Federal income tax for the taxable year 1978. The deficiency resulted from disallowance of business losses claimed by petitioners, disallowance of certain claimed business expenses and itemized deductions, disallowance of investment credit, and other adjustments not now in issue. Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference. Objections to various of the exhibits to the stipulation are *153 sustained for reasons discussed below, and the balance of the exhibits are incorporated herein by this reference. FINDINGS OF FACT Petitioners J.W. and Clairette W. Ratcliff are husband and wife and resided in Livingston, Texas, at the time they filed their petition herein. They filed joint Federal Individual Income Tax Returns for the taxable years 1978, 1979, and 1980. On those returns they reported wages, income from J. W. Ratcliff's ministry, interest income, and miscellaneous income. They also claimed on those returns losses of $28,303.06 in 1978, $21,934.72 in 1979, and $2,255.93 in 1980 attributed to a small business (Subchapter S) corporation known as Dunbar Resources-Livingston, Inc. (Dunbar). Attached to petitioners' 1980 return was a Form 3468, which computed a tentative investment credit of $2,174.68 based upon investments purportedly made by Dunbar. Although the years 1979 and 1980 are not before the Court in this case, petitioners claimed in their petition, at trial, and on brief that they are entitled to carry back to the year 1978 losses allegedly incurred in 1979 and 1980 and an investment credit allegedly earned in 1980. A Form 1120S, U.S. Small Business *154 Corporation Income Tax Return, was filed by Dunbar for the year 1978. The return was signed by Elijah W. Ratcliff, President, and dated January 19, 1979. That return claimed an ordinary loss of $132,597.88, consisting primarily of a $125,000 ordinary loss attributed to "Dunbar Service Station." The return was prepared by Elijah Ratcliff, who arrived at the amount of loss claimed by estimating the profits that the corporation would have made over 10 years' prospective operation of a service station pursuant to a contract that had been assigned to the corporation but was thereafter breached by one of the parties to the contract. The Form 1120S filed by Dunbar for the year 1978 included nine schedules K-1, Shareholder's Share of Undistributed Taxable Income. Those K-1's showed a total of 322 shares of stock reportedly acquired by the shareholders on various dates during 1977 and 1978. One schedule showed 73 shares owned by petitioners that were purportedly acquired on October 21, 1977 and March 21, 1978, without any specification of the number of shares acquired on either date. Two Forms 1120S were filed for Dunbar for the year 1979, one dated January 23, 1980, and one dated *155 March 14, 1980. Both returns reported a loss of $313,353.17. Schedules K-1 attached to the two returns showed a total of 630 shares outstanding, of which 47 shares acquired in 1977 were reported as owned by petitioners. A Form 1120S filed on behalf of Dunbar for the year 1980 reported a loss of $15,039,53. Said return did not disclose the total number of shares outstanding or the number of shares owned by petitioners during 1980. In the petition filed herein, petitioners claim that they are entitled to carry back to 1978 net operating losses in the amounts of $5,546.43 from 1979 and $4,049.69 from 1980. The carryback amount of $5,546.43 coincides with the negative amount of total income shown on petitioners' 1979 income tax return, and the carryback amount of $4,049.69 coincides with the total income shown on petitioners' 1980 return. The latter amount is not even characterized as a loss on the 1980 return. Petitioner J. W. Ratcliff was an associate elder of the United Methodist Organization, and in 1978 he was appointed to pastor St. Paul Methodist Church and Union Methodist Church. He received a weekly salary from both churches. As of the end of the year 1978, J. W. *156 Ratcliff had not taken a vow of poverty, nor had he filed Form 4361, an election not to be subject to self-employment tax. OPINION The evidence offered at trial included certain exhibits consisting of copies of documents filed in various court proceedings. Respondent objected to these exhibits on the grounds of relevance and hearsay, and the Court reserved ruling on the exhibits until such time as petitioners' case was concluded so as to give petitioners every opportunity to tie the exhibits to some material point and to overcome the hearsay objections. Petitioners have not done so, and the objections are sustained. [1]
After trial, petitioners filed a Motion to Reopen Record, which attached documents "to support the basis of Petitioners in Dunbar Resources-Livingston, Inc., as well as investment credits under their pleadings in the above entitled and numbered cause." The tendered documents related to transactions that apparently occurred *157 in 1980. The documents have not been properly authenticated, and no foundation exists for admitting them into evidence. For reasons appearing below, the documents would not cure the defects in petitioners' case, even if admitted. Thus, the motion has been denied. Elijah Ratcliff testified as an officer of Dunbar and as the preparer of the returns for Dunbar and for petitioners. He testified that James Washington had donated to Dunbar a contract involving operation of a service station in Livingston, Texas, and that, as a result of a breach of the contract by one or more third persons, the service station never became operative. The loss of $125,000 claimed on Dunbar's tax return was based upon Elijah Ratcliff's calculation of the profits that might have been earned if the station had gone into operation. "It is well settled that a taxpayer is not allowed to reduce ordinary income actually received by the amount of income he failed to receive." , affg. a Memorandum Opinion of this Court; , affg. a Memorandum Opinion of this Court; *158 see . [2] These losses sustained by Dunbar and purportedly passed through to petitioners as shareholders are, therefore, not deductible. Neither Elijah Ratcliff nor any other witness testified as to the balance of losses claimed by petitioners. On his own behalf, J. W. Ratcliff testified that he was a shareholder of Dunbar, but he did not know how many shareholders the corporation had or what percentage he held in the company. Among the deductions claimed by petitioners and disallowed by respondent were bank service charges and checking fees, the cost of a post office box, sums paid to the teacher retirement system of Texas, laundry and cleaning expenses, floral expense, newspaper expenses (reported as educational literature), the cost of wearing apparel, and various purported business expenses that were not substantiated or even explained. The balance of J. W. Ratcliff's testimony concerned the disallowed deductions, but it negated petitioners' *159 claim that the disputed items were deductible. For example, he admitted that the banking expenses claimed were related to "more or less a personal account." He also testified that as a minister he is not required to wear particular types of clothing, although it may be customary to do so.He did not, however, demonstrate that any of the disallowed expenses were actually incurred in purchasing particular items worn in relation to his ministry. Deductions are a matter of legislative grace, and petitioners must prove their entitlement to them. ; Rule 142(a). [3] Because there was absolutely no evidence connecting the expenditures claimed to a business or income producing activity that would justify deduction of those items, there is a total failure of proof as to them. Respondent's determination disallowing the deductions must be sustained. See ; Rule 149(b). With respect to the losses and investment tax credit allegedly *160 available for carryback from years after 1978, petitioners would have to show not only that the losses were sustained in later years and that the credit was properly computed with respect to qualified personal property placed in service in those years, but they would also have to show how much of the losses were offset against taxable income and how much of the credit was applied to their tax liability in other years. See section 172(b)(2) [4] and section 46(b). Petitioners did not attempt to introduce evidence on these issues other than tax returns for some of the years involved in the computation of carrybacks. Such returns obviously are not evidence that a loss was incurred in the year claimed or that it was available for carryback to a prior year. See, e.g., , affg. a Memorandum Opinion of this Court; , affd. per curiam . In any event, it appears from petitioners' argument on brief that the losses claimed to have been incurred in subsequent years were also losses of anticipated profits and were thus not deductible. *161 [5] As a final matter, with respect to petitioners' claim to losses passed through from Dunbar, the tax returns in evidence set forth inconsistent information as to the percentage of petitioners' ownership in the corporation, and it is impossible to determine from the record petitioners' share of losses in 1979 or 1980, even if deductible losses had been established. Various adjustments made by respondent in the notice of deficiency have not been contested by petitioners, and no discussion of those items is necessary. Various arguments made by petitioners in their brief are not predicated on any evidence in the record and are therefore disregarded. See Rules 143 and 151(e). Decision will *162 be entered for the respondent.
Footnotes
1. As a result of petitioners' acquiescence in certain objections during trial, the only items to which this ruling is required are exhibits 11, 13, and I, described in paragraphs 24, 29 and 31 of the supplemental stipulation of facts.↩
2. Similar claims were rejected in . See also .↩
3. Unless otherwise indicated, any references to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
5. At page 21 of petitioners' brief they state: These losses, similarly to the 1978 service station loss, derived from donated capital of the corporation involving recent contracts pertinent to Dunbar Lawn Service and long outstanding contracts from the calendar year 1970 assigned to the corporation relative to Lake Livingston Taxicab.↩